The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. Good morning. We'll first call number 4-23-1372, People of the State of Illinois v. Xavier Alexander Camper. Counsel for the appellant, would you please state your name for the record? Anthony J. Santello. Thank you. And for the appellee? Timothy J. Londrigan. Thank you. Counsel for the appellant, you may proceed. Good morning, your honors and opposing counsel, and may it please the court. My name is Anthony J. Santello and I represent Xavier Camper in this appeal. We raised three issues, a speedy trial claim, a claim of structural error, and an excessive sentence claim. For Here, the court abused its discretion by imposing a natural life sentence on Mr. Camper without properly considering his youth and mental health. A review of mitigating factors is required before imposing the sentence. Here, Mr. Camper was 20th time of the offense and he did have symptoms of mental illness, which multiple experts recognized in this case. These factors should have been considered before a natural life sentence was imposed. In addition, this court should consider and take note of section 5-4.5-115 of the corrections code. That statute allows for, excuse me, persons under the age of 21 convicted of first degree murder to be eligible for parole review after 20 years. But if a person receives a natural life sentence, they only become eligible for parole review after 40 years. This at least implies that the trial court was aware of this statutory section and imposed a natural life sentence without, excuse me, for the purpose of making sure that Mr. Camper was going to receive a 40-year prison sentence before becoming eligible for parole review. Here, the reason, the stated reason why Mr. Camper received a natural life sentence is that the trial court said that he was incapable of rehabilitation. The factors of youth and mental health undermine that finding, if not contradict it. The reports from both experts said that Mr. Camper responded to medication, that his symptoms did improve with medication. Again, with that and his youth, it suggests that he was capable of rehabilitation. And this court should find that the trial court abuses discretion in imposing a natural life sentence and reduce Mr. Camper's sentence to a term of years if this court reaches the third argument. Counsel, let me ask a question. Sure. Is it your contention that the court failed to state that it had considered factors in aggravation and mitigation? Our contention is that the court did not give any weight to the factors we specifically have raised. The court did discuss mental health specifically at the sentencing hearing. So, the court did consider these factors for mental health specifically as a mitigating factor. That would only apply under the circumstance where it does not qualify as a defense, but there is still evidence on the record to suggest that a defendant could not substantially conform to the law. Here, there was evidence from the experts that suggests, you know, even though the symptoms of mental illness did not rise to a successful defense in Mr. Camper's trial, there was no dispute from the experts. He did have symptoms of mental illness. The degree to which he had those symptoms was disputed, but not that they existed, not that he had mental illness. And that was a valid realm and a valid mitigating factor the court should have considered before sentencing Mr. Camper. As far as the factor of youth, that was not addressed by the court until the motion to reconsider sentence. And even then, it was in the context of the trial court saying, because Mr. Camper was 20 at the time of the offense, the court was still permitted to impose a natural life sentence. Let me ask the question this way. Did the court state that it had considered the appropriate factors of aggravation and mitigation? I believe the court said that it considered all the factors, but when that is contradicted again by the fact that it, you know, we submit that the mental health factor, the mitigating factor, that was not considered as a mitigating factor because the court found that under the court's view, Mr. Camper could conform his behavior to substantially conform to the requirements of the law. We submit that the records show that there were symptoms of mental illness that the court could have and should have considered this as a mitigating factor, and that that did show that there was potential for rehabilitation here. So the court, you know, said it considered these factors, but again, in its actual ruling when it was imposing the sentence, it also says it's not considering mental health as a factor. Here, that is an important factor. You know, Mr. Camper was evaluated for fitness twice. There were issues of his competency. There were issues of his mental illness throughout these proceedings. I believe the trial prosecutor early on in the proceedings said that Mr. Camper was found unfit in another case. So these were genuine things for the trial court to consider before saying that Mr. Camper was incapable of rehabilitation. Counsel, as I hear what you have just said, I believe you acknowledge the court took all of this information in, that is, and you agree there was substantial information regarding his fitness from two doctors. There was information about his mental health diagnoses in the PSI. Aren't you asking this court to re-weigh how the trial court actually looked at this information? And that is something we can't do that as an appellate court, correct? I understand that's the standard, Your Honor. Our position is that while the trial court said he considered the factors before imposing the sentence, specifically as to mental health especially, when the trial court discussed that as a factor, it was not in the realm of, you know, a mitigating factor, and that does cut against it saying it considered all the factors and considered the record of the evidence. Again, the reason why Mr. Camper received a natural life sentence was due to this finding of him being incapable of rehabilitation, and a review of the documents from the experts shows that there was evidence cutting against that. Our position, again, is that the trial court was not considering that information when it imposed a natural life sentence, and we're not asking this court to re-weigh the factors but to give weight to the factor in the first place. That factor should have been considered before a natural life sentence was imposed. And just one follow-up before we turn to another issue. The factor of mental health is to be taken into account as a mitigating factor only if the defendant is unable to conform his behavior to the requirements of the law due to his mental condition. Isn't that what the statute says with regard to mental health as being a mitigating factor? That is correct, Your Honor, and the evidence from the experts, their reports, support that this was a position that, or excuse me, that there was evidence that Mr. Camper could not substantially conform his behavior to the requirements of the law, like you're saying. I believe it was the state's expert who said that, you know, again, Mr. Camper had genuine symptoms of mental illness. While it was hard to measure, he did exhibit genuine symptoms, and that he would react, or those symptoms would be exacerbated in stressful situations, including fights with loved ones, stability issues with housing, and things of that nature. So there is evidence in the record to suggest that Mr. Camper could not substantially conform to the law based on that statute. Oh, again, it's mental health. Sorry, go ahead. Go ahead, Justice Grisham. Well, I thought the both experts found that the defendant was able to conduct and conform to the law. Am I mistaken on that? I believe that the defense expert specifically said that Mr. Camper was not. The state expert said that he was. That was my understanding. Either way, as far as the sentencing statute goes, Your Honor, you know, this would apply in the situation where it does not raise to the level of a trial defense. Here, the trial court rejected the affirmative defense, and we submit that as far as for sentencing purposes under this statute, the evidence here would show that this was a valid mitigating factor, and that is related to the findings of the experts, that there are going to be situations where Mr. Camper can't conform to the law, and that is under stressful situations, and those would exacerbate his symptoms of mental illness. Counsel, I'd like to turn to another issue, given the fact that we've, the time clock is moving. I'd like to focus for a minute on the issue of the jury waiver after the jury was impaneled, and here we're looking at this through the lens of plain error. Even if the trial court was wrong in assuming that it was the defendant's right to do this at this point, rather than that it was the trial court's discretion to allow it, this was really not the type of structural error that is recognized by the United States Supreme Court or even here in Illinois. Isn't that correct? I disagree with that, Your Honor, and as far as the United States Supreme Court, it's not a requirement in Illinois that a structural error must be one of the errors identified by the United States Supreme Court. Our position has always been that this would qualify as a structural error specifically under Illinois constitutional rights, so we would not even suggest that this would qualify under the U.S. Supreme Court. This is specific to the Illinois Constitution because a defendant in Illinois does have a constitutional right to a jury waiver and to a bench trial up to the point when the trial begins. As to the question of whether this would apply under Illinois law, I think there are situations, you know, my understanding of your question is basically, you know, Mr. Kamper is the one who asked for this, and he got what he asked for. That exactly is, let me just interrupt for a minute and affirm that is exactly what I'm focusing on, and here the standard the trial court used was even more favorable to the defendant than abuse of discretion. The trial court thought it was his right. The court did tell, say that it would have exercised its discretion to allow the waiver, and so the defendant did get what he wanted. The court went beyond that and found that the waiver was knowing, voluntary, and intelligent, so what is the issue here? What is the problem? I have two points in response, Your Honor, and the first is that I do think that there are situations where structural error or error can be found where a defendant got what he asked for, and if I could offer just a hypothetical or an example of that, you could have a situation where a defendant, for example, insists that he wants to, he or she wants a specific attorney to represent him at trial, but that attorney might have a per se conflict. So, you know, there are examples in the courts and in reviewing courts where you do have a defendant asking for something specifically and there's an error. The second thing, and I think this relates to the whole of the structural error argument, is that there is an interplay here again between the error itself and Mr. Camper's issues of competency and mental illness. Again, he was found fit to stand trial, but there's a difference between fitness to stand trial and mental illness, right? And the court was aware there were competency issues. The court was aware that when it was in its colloquy with Mr. Camper, it said, have you thought about this? Is this what you want to do? And Mr. Camper said, well, I'd really like another day to think about it, but we're here, so yes, let's do it. So part of the issue here is that when a court exercises discretion or is called to exercise discretion, I think we understand that to mean that the trial court is protecting the prompt and fair administration of justice, is protecting all these trial interests, and that should also extend to those situations where you have a defendant like Mr. Camper, where you do have questions of, you know, again, his competency. That was decided. I know I'm interrupting you, counsel, but that was decided. There was no issue at that point of his competence to stand trial. As you yourself just indicated, mental illness and competency are two different things, and this defendant was found competent to stand trial. So I'm not sure why you're raising the competency issue and inserting it into the defendant's remark that he maybe wanted a little bit more time. Are you suggesting that trial court should have stopped then and there and ordered a new competency hearing in the middle of a trial? No, Your Honor. Just to clarify, when I'm using the word, you know, competency issues, I'm not suggesting that the issue here is that Mr. Camper was not fit to stand trial. That issue was resolved, and I agree with you on that, but I do think that when you have a defendant who, any defendant who is in, you know, arguably in a vulnerable position where there are issues that have been raised throughout trial, even without competency, mental illness was an issue in this case specifically, that is something that should be considered by the trial court when it is using its discretion to consider a jury waiver. And, you know, really the crux of our argument here is that there is an interplay between these health issues of Mr. Camper and the analysis that's going to be used here for a finding of structural error, because that should have been part of the discretion that was exercised by the court when a defendant comes in four days into a trial and says, I'm thinking maybe we should just waive the jury. Again, there's not an absolute right at that point, and the court acknowledged that it just granted the waiver as an absolute right. The court acknowledged it was an error. Reviewing the record, defense counsel at the time that Mr. Camper asked for the waiver, the defense counsel asked the trial court to use discretion, but the court acknowledged it did not use discretion later on. It just granted the waiver. And the court should have been considering. Excuse me, you're suggesting that the trial court should have taken a recess, sent the jury home, given the defendant a day or so to think about this while the jury is sent out or sent home. Is that correct? We're talking about the efficient administration of justice. Is that right? Yes. I don't know if I would suggest that is the only remedy. I think that that's one thing the court could have done. Certainly at the point when the jury waiver was requested, the defense counsel had submitted his witness list. The defense case in chief had not started. This was later in the day, the fourth day of trial. I think everyone knew there was going to be a fifth day, at least. And obviously the state had indicated it was potentially going to put on a rebuttal witness. So I think there was time here. It's not the case, for example, that this waiver was made right before jury deliberations or right before closing arguments. This jury waiver was still made in the midst of trial. And that's one of the things here is that the court did have options. I think the court could have continued the trial for the rest of that day and just told Mr. Camper to think about it for that night. But again, we cited the Zemblich case, which says there are policy considerations. There are things that need to be minimized. And the court did have the option here to give campers some more time to think about this decision. Instead, it appears to have been on a whim. Mr. Camper comes up and says, I kind of want some more time to think about this, but let's do it right now. That time could have been granted. That was something that could have happened. And so we submit there was an error that occurred here where the court gave a discretionless grant of a jury waiver partway through trial. And we submit that this is a structural error because it does affect the administration of justice. It resulted in an unfairness to the trial system and to Camper himself. And the effects of it are hard to measure. The court said that it would have made the same decision. I don't know if that can reasonably be said later on after the trial occurred. Again, this was in the thick of the trial four days in. They had a jury selection. They had a jury. I don't know if it can be said the court would have made the same decision. And for that reason, how is this structural error not invited error here? Well, Your Honor, this court has said that if an error is structural, that invited error concerns or that invited error is not a concern. So we do submit that this is a structural error. This is an uncommon case to be sure. I don't think this would happen in every case going forward. But because of the connection between or excuse me, strike that because of the reasons that we've stated in the briefs and here at argument, we think that this is a structural error and that the invited error concern would not be implicated. And that's something this court has said or has recognized as a rule in the Lewis case, which was cited in the brief. And we would ask that this court would find the same here and find that structural error occurred. I see I'm running low on time just to. To briefly say that we did ask this court to find a speedy trial error occurred. And part of the reason here is that the court misattributed the continuance to the defense on May 12th. We'd asked the court to find that that was an abuse of discretion and that all the days between May 12th and the start of Mr. Camper's trial went against the state and to find a speedy trial violation occurred and reverse Mr. Camper's conviction. The structural error argument as an alternative to that, we would ask the court to reverse and remand Mr. Camper for a new trial. And then as an alternative that again, we would ask this court to reduce Mr. Camper's sentence to a term of years. I have I can answer any other questions. If not, thank you, your honors. Judge, I think I lost audio from you. Are you giving me permission to proceed? I am. Can you hear me now? Yes, I can. Thank you. Very good. All right. Good morning, your honors. May it please the court counsel. I don't want to waste a great deal of the court's time. I can gather from many of the court's questioning of the appellant that they understand the issues that are presented here this morning. I suppose I would touch on each one in the order in which they were presented by appellant, which starts with the sentencing. The state would agree with the comments of the courts that this is clearly an effort by defendant to ask this court to reweigh the considerations that were put before the sentencing court. Defendants claiming that the court did not properly consider his mental record that the trial court specifically addressed each one of these concerns. This evidence of these issues were presented before the court. The court acknowledges that information, indicates that it has considered it, and weighs these issues and comes to its proper determination. That's the function of the trial court. It's not the function of this court now to reweigh those very considerations. The defendant's argument on appeal is simply that he disagrees with the weight given those issues by the sentencing court, but that's not a proper issue for review. With regard to issue number two, I must say I'm confused. Excuse me counsel, I'm sorry if I could just ask a follow-up question with respect to something that opposing counsel suggested, and that is because of that it really was at least an abuse of discretion by the trial court not to have allowed a continuance for the defendant to reflect further on his, and I guess I'm jumping, well part of it is the mental illness comes in here, reflect further on his request to waive jury, but the mental illness aspect comes in here which you were referring to. Why was it, how do you respond to counsel's suggestion on this other issue that does relate to the mental illness and that factor too that was discussed with regard to the excessive sentencing? With regard to the excessive sentencing judge, or with regard to the, well actually my question was focused on the colloquy that I had or the exchange I had with opposing counsel with respect to the issue related to the waiver, the jury waiver in the middle of trial, but it related to his mental illness. And your question now concerns the sentencing court. Will you respond to his suggestion that it was an abuse of discretion for the trial court not to have granted a recess or to the defendant to further consider his waiver? Okay, so we're on issue number two now. Right, but they were related to, I jumped the gun a little bit I think, as they say. That's where I was going to judge, so I understand where you're headed. All right, with regard to the jury waiver, I was beginning to say I'm a little confused by all this because in order for this issue ever to be in front of the court in the first place, we have to establish that it was structural error, and I don't understand how we arrive at any error whatsoever, let alone structural error. But to address your specific concern about this defendant's mental illness, if in fact he has any significant mental illness, I believe the diagnosis was a mild case of bipolar, and the evidence is that he's malingering. In other words, he's creating problems for himself, you know, attempting to avoid justice by claiming that he has a mental problem. But that was debunked by the state's experts. He was found competent to stand trial. He has his attorney standing next to him, joining in this motion to proceed by bench and to waive the jury. So I don't see where this is a serious concern for the court. Now, the fact that a defendant says, well, geez, I would like another couple hours, another couple of days. This is not something that was thought of at the last moment. Defense counsel suggests that he went to the defendant sometime previous to this to discuss with him a potential for a jury waiver. He even brought with him a third party to act as, I suppose, some type of witness to this conversation. So it's very clear that this issue was anticipated. This issue was planned for and previously discussed between the parties. And if we're discussing, you know, concerns about the prompt and fair administration of justice, how the heck is that advanced by allowing this guy to play games in the middle of a jury trial and halt the jury trial for an unknown period of time? You know, we're doing backflips here in an attempt to try to equate structural error. This was not the consideration of the court in Zimbelig, if that's how you pronounce that case. You know, the defendant raises Zimbelig as some case that would support policy considerations expressed in that case that he feels apply in this instance. The policy considerations expressed in Zimbelig had to do with gamesmanship. The defendant jerking around the court by requesting an absolute right to proceed in a bench trial at some point after the initiation of the trial by jury. So the policy considerations considered by that court, the prompt and fair administration of justice, were granting the trial court some discretion in these matters after the initiation of the jury trial. It doesn't attempt to raise structural error under these issues. It doesn't grant the defendant additional rights. On the contrary, it removes the absolute right of the defendant to make this jury selection after the trial begins and grants it to the trial judge. So how are we a right? I'm sorry, Judge, you had a question. Yeah, I was trying not to interrupt. Isn't this argument, however, regarding consideration of the considerations usually used when the right to waive or the request to waive jury trial in the jury in the middle of a jury trial is denied? Here it was granted. So how are those policy considerations regarding the fair and efficient administration of justice and the waste of state relevant? I couldn't agree more, Judge. I mean, I was just following the rabbit down a hole there. That seems to be the argument being advanced by defendant on appeal. But I agree with the court. How do we even get to this discussion? The guy asked for a bench trial. He was granted a bench trial. I don't see the error at all, let alone structural error. So I agree with the court's observation that discussions of structural error really have no application. And the judge clarified, even if he did apply his discretion, he still would have made the same ruling. So the defendant gets exactly what he asked for. And somehow that's structural error. I don't understand the argument. I don't think it holds any water. I think it's an absurd, convoluted discussion of existing law. Thank you. With regard to issue number one, I think I've addressed this pretty clearly in my brief. There isn't any way we get to an issue of speedy trial. First of all, the defendant wants us to begin at May 12 and go through September 11. It's very clear from the defendant is responsible for all delay up until the trial date that was set for May 22, 2023. So there's no way the clock begins to tick on May 12th. The earliest possible date it begins to tick is May 22. On May 19th, when they're discussing an alternative trial date, the court suggests August 14th. The defendant says, no, I can't do that. I'm in another place. I'm in another trial. You know, I'm not available on August 14th. So the judge says, okay, how about September 11th, to which the defense counsel agrees. So we got two issues right there. One, unavailability of defense counsel's responsible for the delay from August 14th to September 11th, clearly. And now we have the defense counsel saying, I agree to the trial date of September 11th. Doesn't say, judge, that's beyond the speedy trial statute. Doesn't say, judge, we have an issue of speedy trial. Doesn't say speedy trial at all. Never raises it. Agrees to the trial date of September 11th. Never raises this issue whatsoever until the day of trial on September 11th. And then when he does so, he clearly doesn't raise the time period that's being referenced now on October 1 through October 22 of the previous year. So we have issues, you know, first of all, even if the state's responsible for some delay, it clearly does not amount to a delay of 120 days. At most you have like 84 days. Then we have issues of gamesmanship here by defense counsel. He says he's going to produce this expert's report. He says his expert has a preliminary report. Says his expert needs more time to prepare his report. Says his expert needs additional discovery to prepare a report. Then on the final day, when the judge finally says, you give us that expert's report by this drop dead date, I think it was April 6th, he calls up and says, I'm not going to give you an expert report. Now the state interprets this by meaning, well, I guess you're not calling your expert. And the court interpreted that statement to mean the very same thing. Excuse me for interrupting, but the state knew there was no requirement that a report actually be filed or issued. Isn't that correct? The state knew that after they researched the issue judge. Yes. Well, I mean, they need to be proactive counsel. I mean, they don't want, if you're preparing for trial, you don't wait until the minute this happens to anticipate for heaven's sakes. Right. So they knew, and certainly they knew there was an expert retained. So I'm not sure where you're going with this, given that situation. They should have been prepared, should they not? Well, in this jurisdiction, it's obviously the common practice and procedure to have an expert's report file. And if the other side's not going to do that, that's fine. As the court points out, they don't have an obligation legally to do so. However, when you promise that this is the procedure that you're going to follow, when you indicate to the court, that's the procedure that's going to be followed. And the state relies upon your promise and affirmations that that's the procedure. You can't now claim, you know, that the law didn't require you to do it. You promised you would do it. The state relied on it. The court relied on it. Now, if you didn't want to do it, say you didn't want to do it back in December when the issue was first discussed in the court and the, or the state rather could have proceeded alternatively. They would have ample time at that time to go before the judge and ask for an opportunity to examine the expert, gather the information required, determine how they wish to proceed and whether or not their own expert was required. That could have been an alternative, but they were baited into not doing that by the defendant's bad conduct. What about counsel? The state knew that the defendant was planning on raising insanity as a defense. Why shouldn't the state be prepared regardless of the status of defendant's expert report? Well, judge, you never know what an expert's going to say. And, you know, you can raise the issue, but you don't know the substance of it until you have an opportunity to examine the expert. You know, the expert can waive any number of issues. And you may feel as though you need your own expert to combat those, or you may feel as though you have treatises or other information that you could cross-examine the expert with that would obviate the necessity for that type of thing. There's many ways to attack an adverse expert, and hiring your own expert is just one of the many. So, in this instance, as in any trial practice and procedure, you first have to find out the basis for the opposing expert's opinions. And in this procedure, I suppose, you can go one or two ways. And the most common and the most efficient, I would suggest, procedure is just give us the expert's report. That's what's commonly done in this jurisdiction. It's what everybody's relying upon, and this guy's jerking us around, making promises, and then trying to get around them. And I think that's inappropriate. It's bad faith. Mr. Lonergan, can you hear me? Yes, I can, judge. Okay, I just wanted to be sure. Aside from the report, isn't this an issue of disclosure? The court made a statement we're not going to trial without a disclosure as the anticipated scope of the testimony. The court further allows an opportunity for an offer of proof and finds that offer of proof to be insufficient. So, it seems to me that while the state should have been ready to handle the testimony, this is more the matter of the trial judge presiding over the case, setting the parameters as to the disclosure, and then found the disclosure to be insufficient. Do you have any position on that? Well, I think I understand where the court's coming from, judge, but that issue becomes a little confusing when you have to balance that with whether or not the defendant has a legal obligation to actually present an expert's written opinion. I'm assuming from Judge Zenov's comment that it's the court's opinion that there is no legal obligation to make that requirement. So, the court making its general disclosure requirements probably cannot order that. However, the problem here is really the common practice and procedure of the jurisdiction. The court is assuming that the defendant's going to do as the defendant has promised he's going to do, and that is produce this report. It's the most efficient, easy way to do this. And the court's comments with regard to production is simply, we're not going to allow you to play without giving the state an opportunity to at least discover what this expert's opinions are. And that's exactly what defense counsel is doing. He's delaying, he's hiding, he's, you know, saying I'm going to do this, and then he doesn't do that with the purpose of trying to avoid disclosing his expert's opinions. That's not the purpose of discovery. That's not how we try cases in the United States. And this type of practice should not be condoned by any court. I see my time's about up, but if the court has any further questions. Any further questions? We don't have any. Thank you, Your Honors. Thank you, Mr. Lonergan. Mr. Centella? Rebuttal? Thank you, Your Honor. I have quite a few things I'd like to respond to, and I will go in the order that opposing counsel went in as well. To start with sentencing, again, our argument is not that we are asking the court to reweigh the factors. Our argument is that factors were not weighed. And as to Justice Kavanaugh's original question, I did review my notes. What I have written down of what the trial court said regarding the factors was that he said now he's going to the factors of mitigation. I did not have in my notes that he said that he reviewed all factors of mitigation. So my position is that it's unclear if the trial court said he reviewed all factors of mitigation, as opposed to simply saying he's going to go over some factors of mitigation, did not discuss youth, and for mental illness. Again, our position is that there was evidence here in the record that there could have been, excuse me, that that was a mitigating factor that could have been relied on so as to find that there was capability of rehabilitation and preclude a natural life sentence. On the second issue, and specifically as the mental illness expert, first for a factual clarification, opposing counsel has said that, well, Mr. Kamper is just malingering everything. We don't deny that, especially that the state's expert did say that there was evidence of malingering. That's a fact here. But the state's expert also said that there was genuine symptoms of mental illness. We're not disputing that this is a difficult thing to measure. Obviously, mental illness is not like taking a blood test and getting a result right away. The state's expert said that this is the sort of thing that takes time, and he believed there were genuine symptoms of mental illness. I think as to the second issue, specifically, the state takes issue with Zembelich's rule. Zembelich has been followed by reviewing courts. This is a rule in itself. The trial court acknowledged it made an error when it did not use discretion in granting the jury waiver partway through trial. The state says that defense counsel suggested this, that this was his fault, that this was some sort of gamesmanship. That's the state's own reading of the record. I think that is incorrect. What defense counsel represented on the record is that on that day, he had to have a meeting with Kamper. He did not join in Mr. Kamper's motion, but as Mr. Kamper's attorney made a point to say, this is what Mr. Kamper wants, so it's up to the court's discretion. Then defense counsel challenged the issue later on as error. I disagree very strongly with opposing counsel that this was defense counsel's strategy, or this was some sort of gamesmanship. Again, the record showed this was something that Mr. Kamper seemed to think of that day that he wanted to do, and defense counsel certainly did not join in that motion. Defense counsel, again, challenged it later on. I'd like to talk more about the speedy trial issue, and there are a few things here. The first is, again, the state's reading about the August 14th also is incorrect. The state misquotes defense counsel as saying that he affirmatively agreed to the September date. I think there's a few things here. As to the court's suggestion of an August date, when the court suggested that, it was defense counsel who was trying to get a date as soon as possible. I don't think it should be held against defense counsel that he had another trial scheduled when the court said, let's do August. Then when the court said, well, we can do a day in September, all defense counsel said was that I have nothing in September that can't be moved around. It was the trial court that then set September 11 as the trial date. Defense counsel did not affirmatively acquiesce to that, but at a certain point, if there is a speedy trial issue, a defense attorney is going to have to acquiesce to a date the court picks. I don't think that this court would accept a defense attorney refusing to accept any date in a speedy trial issue. I think that courts would find that to be obstinate. The reason why, again, this date did end up being set in September and being set so far out from the May date is not defense counsel's alleged gamesmanship, which we disagree with. It's that the state refused to seek appointment of its own expert until very late in the game. Opposing counsel says, well, we needed the expert report, but the state was aware as early as September 2022 what the issues were going to be regarding involuntary intoxication and insanity. In fact, there is a statute, section 115-6 of the Code of Criminal Procedure. I see I'm running out of time, Your Honor. I'll just conclude and say that we disagree with the state's arguments. I can take any other questions, but we do not believe this was gamesmanship. We believe defense counsel acted appropriately following the court's orders and that this court should find that the trial court misattributed the continuance to the defense and that a speedy on that issue. Counsel, you made a statement that you don't believe that the counsel having another trial elsewhere, the fact that he couldn't be available should not be attributed to the defense. Can you explain that for me? Sure. This also relates again to the fact that the prosecutor was not seeking appointment of the expert, of their own expert, up through that point up until this August date was suggested. Excuse me, was suggested. So here, you know, the state is the party that came in and changed the posture of this whole case. That's part of the reason we think May 12th is an appropriate starting date. Let me narrow the focus here. My question is, if the defense counsel is not available due to another court matter and can't answer ready for trial, who should that delay be attributed to? I think it should be to the state because the state is the party that was delaying the trial into August and beyond by not seeking appointment of its own expert. The state knew that, knew what the issues were going to be. The state had statutory authority to seek appointment of its expert. The state says, well, we can't, we can't, we can't appoint our own expert because we don't know what the other expert's going to say. You know, an expert witness's job is not to attack another expert. The state was seeking the experts to review the issues of insanity and involuntary intoxication, not to simply attack a defense's expert here. So the reason why, you know, that what the state is saying should not be accepted by the support is that it was the party that was not seeking appointment of an expert until late in the game, even after the continuance or the May 12th continuance was granted. You know, at that point, the state was saying, well, we've already contacted our expert. We already know how long this is going to take. We already know we want the expert. And is not seeking the appointment until two months later. And I don't think that it's acceptable. Pardon your honor, is there a question? Please, you can sum up. Sure. I don't think it's acceptable to lay that flame on the defense because there's not a requirement that an expert generate a report. What the state has not mentioned here today is that defense counsel asked for more time for its expert to generate a report. It asked for extra days. It our experts traveling outside of the country. He can get a report by this date. The trial court said, no, we're going to do it on April 6th. And then April 6th, you know, because he didn't have the extra time. I don't think that's gamesmanship. I think that is just a result of there not being enough time. Defense counsel appeared ready for trial on May on the May dates. So just to conclude, we'd ask this court to find a speedy trial violation occurred or to reverse remand for new or to reduce Mr. Camper's sentence to term of years. Thank you. Counsel, thanks for answering my question. Any further questions from the court? No. Very well. Thank you both. Court will take this matter under advisement and now stands in recess.